Justin T. Green
Kreindler & Kreindler LLP
485 Lexington Avenue
New York, New York 10017
Tel: (212) 973-3430
Email: jgreen@kreindler.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
------------------------------------------------------------------x

**MARTA DIAZ-PUPEK,**

                                **Plaintiff,**

                **-against-**                                    **COMPLAINT &**
                                                                 **JURY TRIAL DEMAND**
**BRITISH AIRWAYS PLC,**

                                **Defendant.**
------------------------------------------------------------------x

        Plaintiff MARTA DIAZ-PUPEK, as and for her Complaint against Defendant BRITISH

AIRWAYS PLC ("BRITISH AIRWAYS"), alleges the following upon information and belief:

                                **PARTIES**

        1.      Plaintiff MARTA DIAZ-PUPEK is a citizen and resident of the State of New

Jersey, residing at 31 Horseshoe Lane, Mullica Hill, New Jersey 08062.

        2.      Defendant BRITISH AIRWAYS is foreign corporation with its principal place of

business located in London, United Kingdom with a registered address of Waterside, PO Box 365,

Harmondsworth, UB7 0GB.

        3.      Defendant BRITISH AIRWAYS is a common carrier engaged in the business of

transporting passengers for hire by air.

        4.      Defendant BRITISH AIRWAYS holds a Foreign Air Carrier Permit issued by the

United States Department of Transportation that authorizes it to conduct flights between the United

Kingdom and the United States, including to and from Newark International Airport in the State of New Jersey.

5.     Defendant BRITISH AIRWAYS is registered to do business in the United States of America, maintaining its principal executive office within the State of New York at 2 Park Avenue, Suite 1100, New York, New York 10016.

## JURISDICTION AND VENUE

6.     The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sec. 1331, insofar as a federal question is presented pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (the "Montreal Convention"). In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the controversy is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     Subject matter jurisdiction is proper under the Article 33 of the Montreal Convention because Plaintiff's principal and permanent residence is located within the United States of America, in the State of New Jersey, and Defendant BRITISH AIRWAYS operates services for the carriage of passengers by air and maintains offices for that purpose within the United States of America and the District of New Jersey at Newark Liberty International Airport.

8.     Personal jurisdiction is appropriate over Defendant BRITISH AIRWAYS because the Defendant's affiliations within the United States, and in the State of New Jersey in particular, are so continuous and systematic as to render it essentially at home in the United States and therefore subject to the general jurisdiction of the United States District Courts. Defendant BRITISH AIRWAYS maintains an office within this District at Newark Liberty International Airport (EWR), leases commercial space within EWR, operates daily scheduled flights to and from

EWR, and regularly solicits business from the citizens of this District.

9.     This Court also has specific personal jurisdiction over Defendant BRITISH AIRWAYS because Defendant has purposely availed itself of the privilege of doing business in New Jersey, regularly conducts business in New Jersey, including selling airline tickets and operating flights in New Jersey, benefits from the laws and protections of New Jersey, and Plaintiff's claims arise from and relate to Defendant's in-state contacts.

10.     Venue is proper in the District of New Jersey under 28 USC § 1391(b)(3) because Defendant BRITISH AIRWAYS is subject to this Court's personal jurisdiction with respect to the instant action.

## FACTS OF THE CLAIM

11.     At all times herein relevant, Defendant BRITISH AIRWAYS was and remains a common carrier engaged in the business of transporting passengers for hire by air.

12.     At all times herein relevant, Defendant BRITISH AIRWAYS employed flight crews responsible for the safe and secure operation of their flights and the safety and well-being of their passengers.

13.     At all times herein relevant, Defendant BRITISH AIRWAYS employed flight crews and gate agents responsible for the safety and well-being of their passengers during the boarding process of their flights.

14.     At all times herein relevant, Defendant BRITISH AIRWAYS was responsible for the training, management, supervision, and/or control of its employees, agents, servants and/or contractors, including but not limited to their adherence to standard safety practices, policies and protocol.

15.     On June 14 and 15, 2019, Defendant BRITISH AIRWAYS operated and controlled

a certain aircraft designated as British Airways flight 66 from Philadelphia, Pennsylvania (PHL) to London, United Kingdom (LHR) ("the subject flight").

16.     On June 14 and 15, 2019, Plaintiff MARTA DIAZ-PUPEK was a fare-paying passenger ticketed to travel aboard the subject flight. Flight 66 was the first leg of Plaintiff's international round-trip itinerary, which was to continue on to Venice, Italy (VCE).

17.     Plaintiff purchased her ticket for the subject flight in New Jersey.

18.     On June 14 and 15, 2019, British Airways utilized a certain Boeing 787 jet aircraft ("the subject aircraft") to operate the subject flight.

19.     British Airways flight 66 departed Philadelphia at approximately 6:40 PM on January 14, 2019 and landed at London-Heathrow near sunrise on June 15, 2019.

20.     Disembarkation from the B787 used to operate the subject flight can be accomplished by one of two means: through the use of an exterior set of portable air stairs, or via a covered jet bridge that connects directly to the terminal.

21.     On June 15, 2019, British Airways utilized a set of exterior air stairs to disembark passengers upon landing of the subject flight at Heathrow.

22.     While descending the stairs, upon placing her foot onto the second-to-last step, the presence of a slippery, dangerous substance caused Plaintiff to slip, lose her footing, fall down onto the tarmac, and become seriously injured.

23.     At no time prior to landing at Heathrow, nor at any time before it became Plaintiff's turn to exit the aircraft after she left her assigned seat, did any member of the crew warn her of the presence of a dangerous condition on the air stairs. Moreover, Plaintiff was not offered or provided with any assistance in navigating her way onto and down the stairs from the plane to the ground.

## COUNT I: MONTREAL CONVENTION

24.     Plaintiff's injuries were caused by an accident pursuant to Article 17 of the Montreal Convention because she became physically injured while disembarking her flight as the result of an unexpected or unusual event or occurrence external to her, and not as the result of an internal reaction to the usual, normal and expected operation of the aircraft.

25.     As a direct and proximate result of the aforesaid accident, Plaintiff was caused to become seriously injured.

26.     As a direct and proximate result of the aforesaid accident, Plaintiff was caused to become permanently injured.

27.     As a direct and proximate result of the aforesaid accident, Plaintiff was caused to suffer great pain, agony and mental anguish.

28.     As a direct and proximate result of the aforesaid accident, Plaintiff was caused to sustain significant economic loss and in the future shall continue to sustain great economic loss.

29.     As a direct and proximate result of the aforesaid accident, Plaintiff was forced to expend great sums of money on medical treatment and in the future shall continue to expend great sums of money on same.

30.     As a direct and proximate result of the aforesaid accident, Plaintiff is entitled to compensation for past and future lost earnings, past and future lost accumulations, and past and future medical expenses.

31.     Defendants cannot meet their burden of proving that their own negligence did not cause or contribute to the aforesaid accident, or that Plaintiff's injuries were caused solely by the acts of third parties, because:

   a.   Defendant's employees, agents, servants and/or contractors recklessly and

carelessly permitted the affected area to become and remain in a hazardous, unsafe and dangerous condition;

b. Defendant's employees, agents, servants and/or contractors were charged with a duty of care to ensure that said areas were free from hazards, defects, or dangerous conditions that may have resulted in injuries to passengers;

c. Defendant's employees, agents, servants and/or contractors recklessly and carelessly violated their duties to passengers disembarking the subject flight by knowingly permitting the existence of a hazardous, unsafe and dangerous condition on the external staircase and failing to take suitable precautions for the safety of persons lawfully disembarking the subject flight;

d. The condition that caused Plaintiff's injuries had existed for a sufficient length of time that Defendant's employees, agents, servants and/or contractors were aware, or should have become aware, of the condition's existence in the exercise of reasonable care;

e. Defendant's employees, agents, servants and/or contractors failed to determine that the aforesaid hazardous, dangerous and unsafe condition existed in a location where passengers had no choice but to walk order to disembark the subject flight; and

f. Defendant's employees, agents, servants and/or contractors failed to warn passengers disembarking the subject flight about the existence of the aforesaid hazardous, dangerous and unsafe condition.

     g.   Defendant's employees, agents, servants and/or contractors failed to implement or follow appropriate policies and procedures to ensure that passengers could disembark the subject flight without undue risk of injury.

32.    Based on the foregoing, Article 17 of the Montreal Convention renders Defendant strictly and absolutely liable to pay full, fair and reasonable damages to Plaintiff for the totality of compensable injuries and damages sustained as a result of the subject accident.

33.    Defendant cannot limit its liability under Article 21 of the Montreal Convention because it cannot show that its negligence did not cause or contribute to the subject accident and the resulting injuries to Plaintiff, nor can it prove that the injuries suffered by Plaintiff were caused solely by the acts of third parties.

**WHEREFORE**, Plaintiff MARTA DIAZ-PUPEK demands judgment against Defendant BRITISH AIRWAYS in an amount to be determined at trial, together with interest, costs and disbursements of this action.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  June 3, 2021

                **KREINDLER & KREINDLER LLP**

                *s/ Justin T. Green*
                _____
                Justin T. Green
                485 Lexington Avenue, Floor 28
                New York, New York 10017
                Tel. (212) 687-8181
                *Attorneys for Plaintiff*